*Orphans' Court, Dauphin County, February 14th, 1859.*

### In the Matter of Moyer's Estate.

The real estate of a decedent was ordered by the Orphans' Court to be sold subject to a mortgage, but by mistake sold discharged of the incumbrance, the sale confirmed by the court, and the lien paid off by the executor.
*Held,* That he must be surcharged with the amount of the mortgage. *Held further,* That an auditor appointed to pass ·upon the executor's account had not the power to·correct this mistake. *Held further,* That after a lapse of fifteen years, the Orphans' Court will not amend their records so as to correct such an error, especially upon parol evidence.
A party is too late in demanding an issue after an auditor has decided the question against him; such demand must be made at an early stage of the proceedings, and should be in writing.
When an executor obtained more money by not entering, and proceeding upon a judgment held by him, he is not responsible to the heirs of his decedent for a neglect of duty.
When exceptions to an executor's account have been sustained, he must be charged with the expense of the audit.

By the Court.—Jacob Loudenslager, as executor of George Moyer's will, settled his account in the Orphans' Court of Dauphin County on the 22d of April, 1858, after a citation. The account as exhibited resulted in a balance in favor of the executor. Numerous exceptions were filed by the heirs, and the whole were referred to an auditor, who has made a very full report to the court, resulting in a net sum due to the estate of $2486.78. To that report exceptions have been filed by both the executor and heirs. We shall not examine those exceptions in detail, but merely refer to some of the most prominent.

The largest in amount arises out of a sale of the land of the decedent, made in 1842, under an order of the Orphans' Court. At the time of sale the estate was bound by a mortgage in favor of Joseph Batteiger for $1200, payable in instalments of $150 per annum, the first falling due in 1844. And the court ordered it to be sold subject to that mortgage. At the time of sale it is averred, and abundantly proved, that neither the executor, the purchaser, the crier, or any other person present was capable of reading the order; and from that cause it was proclaimed that it should be sold for a gross sum, and the lien by mortgage should be paid out of the bid.

The property was struck down to Jacob Miller for $3300, who signed a memorandum on the same day, saying that he had bought it at that price agreeably to the order—of course subject to the mortgage. On the 21st, of November, 1842, Mr. Loudenslager reported to the Orphans' Court that he had sold the estate to Miller for $3300, " on the condition within mentioned," which was indorsed on the order and verified by the oath of the executor, and confirmed by the court on the same day. This sale was followed by a deed made on the 5th of April, 1843, reciting the sale for $3300, and receipting in full for the purchase-money;

[In the Matter of Moyer's Estate.]

and by a separate receipt then given, and from the oath of Joseph Miller, Esq., it appears that the executor and purchaser were both aware of the error which had been committed in the sale and report, but supposed that it would be corrected by Mr. Loudenslager giving a receipt in the form prepared, and that he could lawfully apply the money to the discharge of the mortgage due Batteiger. That an error to the amount of the twelve hundred dollar mortgage was committed in this case we think is abundantly established by the evidence produced before the auditor, and his report satisfies us that he was convinced of the mistake. Could he, by the rules of law, correct it? As we conceive, it was entirely beyond his power. The records of the Orphans' Court showed that the land sold for $3300, subject to the mortgage, and the auditor could not correct that record, nor allow the executor a credit for the amount paid by him in discharge of the mortgage. The purchaser was bound to pay it, and but for the receipt given by the executor could have been obliged to comply with that part of the order of the Orphans' Court, notwithstanding their mutual agreement to the contrary. According to the case of Vandever *v.* Baker (1 H. 121), parol evidence cannot be received to show that different terms were agreed on at the time of sale from those presented, after a report to and confirmation by the Orphans' Court. We are well satisfied with the course of reasoning pursued by the auditor on the part of this case, and he is abundantly supported by authorities. To reiterate them or enter into any further examination, would be a waste of time, especially as the whole subject is before us in a more plausible form, an application to amend the record by a petition in the nature of a bill of review. The duties of an auditor in the Orphans' Court are strongly analogous to those of the same officer in distributing money arising from sheriff's sale. If it is intended to controvert the validity of a judgment of record, and show that it was obtained or kept on foot for the purpose of defrauding creditors, it must be done before the case goes to the auditor; he cannot inquire into such questions. It is true he may, on a proper case being presented, suspend proceeding until the person desiring to contest the validity of the judgment can make his application to the court in which it is entered, for an issue, and if the same is found to be invalid, as against the contracting creditor, it will be removed, and the auditor will proceed with his duties. And this brings us to one question presented by the report. Was it the duty of the auditor, under the circumstances stated, to suspend action until an issue could be made up and tried? As we conceive, the demand was not made in proper form, or in proper time.

After the evidence had been heard by the auditor and his opinion expressed against the views taken by the executor's counsel, the issue was requested. In our opinion, the demand for an

[In the Matter of Moyer's Estate.]

issue should be made in an early stay of the proceeding, should be in writing, clearly express the points to be tried, and should be founded on a statement of facts verified by affidavit. It has been decided that the party is too late in demanding an issue after going to a hearing before the auditor and learning his views of the case (5 Casey, 513 ; 4 Casey, 165 ; 3 Casey, 166).

He has no right to first take the risk of a trial before the auditor and when dissatisfied with his judgment seek another tribunal. The request was too loose in form and substance. The object was to contradict a record by parol, which was inadmissible, and to do it by disproving the evidence produced by the party himself before the auditor, showing that the bid was but $2100, whilst all of the witnesses testify it was $3300, but that the amount of the mortgage was to be deducted from the bid. The exceptions taken by the accountant to the report of the auditor are overruled.

There are but two exceptions by the heirs which we consider it necessary to examine, that relating to the judgment against Daniel Emanual, and the expense of the audit—to the last of which the attention of the auditor does not appear to have been called. The testator held the judgment bond of Emanual for about five years, without having it entered in the prothonotary's office. When it came into the hands of the executor, it was his duty to have it entered in a reasonable time, notwithstanding the course pursued by the testator. Not having done so, he is, *prima facie*, responsible to the estate for a neglect of duty ; but that responsibility may be arrested by showing that no loss, but a gain, accrued to the estate; that what was apparent neglect was, in reality, sound policy. It is established to our satisfaction, and was to that of the auditor, that more money was received from Emanual by his voluntary exertions than would have been made by any compulsory process. The executor so managed as to collect from him a much larger sum than the value of all the property which could have been levied on and sold by execution. This being the case, the estate has sustained no loss by the course pursued, and the subject is properly disposed of in the report. The expense of this audit should, in our opinion, be paid by the accountant. We are aware of the extreme hardship on him of being obliged to pay $1200 which he never received, and the advantage to the heirs of recovering that much more money from the executor than the value of their ancestor's estate, money which never came into the pockets of the executor; but we must not permit those considerations to sway the settled rules of law.

In this case, the account as stated showed the executor in advance with the estate, and a balance in his favor. By the report of the auditor, which we believe to be correct, there was due to the estate the sum of $2548.61 when this account was filed.

[In the Matter of Moyer's Estate.]

The heirs, therefore, had good ground for demanding an investigation, and should not be obliged to pay the expense of correcting what they have clearly established to be errors on the part of the executor. To take the expense of the audit out of the funds in the hands of the executor, throws the whole loss on the heirs. This is contrary to the decision in 10 H. 41; 5 Casey, 513; 3 Penn. L. J. 116, and several other reported cases in our State. The sum of $61.83, charged on this audit, must be paid by the executor, and with that correction, the auditor's report is confirmed.

We will now proceed to consider the petition of the accountant, asking to correct the error committed by him in reporting the sale of the real estate of the decedent on the 21st of November, 1842, and the answer of Isaac Moyer and the other heirs of George Moyer, deceased, to that petition. This application was presented before the exceptions to the auditor's report were argued, and the whole was heard together. The evidence taken by the auditor was used by both parties on the argument of this part of the case, and as the application, if favorably received, would materially affect the result, it must be considered as if first decided. From what we have already stated in this opinion, it must be clear that we consider the mistake established beyond any doubt or dispute. It is not apparent in any of the writings, but rests entirely in parol. Can we lawfully correct the error by amending the record? In England, fraud and mistake are peculiarly cognizable in courts of equity, and a bill of review may be maintained at any time within twenty years, and, according to some of their decisions, even after an appeal to and confirmation of the decree by the House of Lords. It is true that we have not recognized that doctrine in the United States after a review and affirmance in the superior courts (6 Barr, 402, and the cases there cited). But no such impediment stands in our way in the present case.

This is not, however, a bill of review, which is only allowable for error of law appearing on the record, for new matter which has arisen since the decree. or for new proof which has come to light after its passage, and which the party could not have availed himself of at the time. It is in plain English a petition in the Orphans' Court, asking to correct an error committed by the petitioner himself in reporting a sale of property to that court, on which its decree was founded. The principal objections to allowing the amendment are, the great length of time which has elapsed since the mistake occurred, and that it must be established entirely by parol evidence. Our Orphans' Court is governed in many particulars by the same rules which regulate proceedings in chancery, but it is by no means possessed of all the powers of that court. Its jurisdiction is conferred by various statutes, and in some particulars is narrow and limited; in others broad and ex-

[In the Matter of Moyer's Estate.]

tensive.   Chancery is restrained as to the time within which it can give relief by analogy to the statute of limitation, the Orphans' Court by analogy to the various laws enacted for its regulation. The time given for an appeal to the Superior Court is three years; that for reviewing errors in the account of an executor or administrator, five years; that for prosecuting a writ of error in the common-law court, seven years.   It is strongly intimated by Judge Bell, in George's Appeal (2 Jones, 260), that the time will be fixed for correcting errors in the Orphans' Court by analogy to some of these statutes.   After six years the party is ordinarily barred from correcting all errors or mistakes by action, or by means of set-off in the common-law courts, provided that mistake be known to the party asking to correct it.   In this case the executor knew at the time he was selling, that he was doing it by virtue of an order of the Orphans' Court, and should have made himself acquainted with the terms of the order before proceeding, although we are satisfied from the evidence, that none of the parties present were capable of reading the order.   Yet that same day a report of the sale was drawn by Esquire Shiner, and signed by the purchaser, and there could be no doubt that Shiner could have read the order.   Sixteen days afterwards the executor made his report to court, and the same is drawn up in form by his counsel (if he had one); and then the mistake could have been corrected, had he furnished the necessary information.   On the 5th of April, 1843, the executor executed a deed, reciting that the sale of the land was for the price of $3300, and receipted in full for that amount of purchase-money.   There was *then* ample opportunity to obtain proper instruction from the person preparing the deed.   On the same day it is shown by the evidence of Squire Miller that the error was talked over between the vendor and vendee.   He informed them of the effect of the return of sale, and that Jacob Miller would take the land, subject to the payment of the $1200 mortgage.   They declared that such was not the intention, and the receipt given in evidence was then prepared, and signed to relieve the purchaser.

It is very probable that the executor was too ignorant of law to understand that, by relieving Miller from a burden, which he had in law taken on himself, he was placing it on his own shoulders.   But it is very clear that he then knew the facts, and courts cannot relieve against ignorance of law.   Had an application been then made to the Orphans' Court, there is no doubt this mistake could have been corrected, either by setting aside the sale, or permitting the return to be altered.   But the executor never moved in the business for upwards of fifteen years, when he settled his account, and undertook to show that the sale of the land for 3300 was subject to a mortgage of $1200, in plain contravention of the order of the Orphans' Court.   Nor is there any application to

amend that record until after a hearing before the auditor, to whom the account was referred. Although we have every desire to relieve the accountant, and sustain his application, yet, as we understand the law, it cannot be done after so great a lapse of time. Even a court of chancery will require of every party to proceed with *reasonable diligence;* and this is more expressly the case when the record of a court is asked to be corrected by parol evidence. In the present case not one scrap of writing, not even a private memorandum coextensive with the sale, has been exhibited to establish the mistake, and even the receipt drawn by Esquire Miller some months after, is equivocal. We should consider the precedent asked to be introduced by the proposed amendment, most dangerous to the community, subsersive of all the rules of law, and destructive to the records of our courts.

Although mistake and fraud are generally relieved against in equity, yet it cannot be done when a party sleeps over it for fifteen years after its discovery. Our courts of law have always held in this State that an action cannot be sustained to redress a wrong occasioned by fraud or mistake, unless the suit is brought within six years after discovery. We must date that discovery here from the time of the conversation with Squire Miller on the 5th of April, 1843. Loudenslager then knew every fact which he knows now, and if ignorant of the law, should have taken advice. Men should not undertake duties and trusts which they have not sufficient knowledge to perform with reasonable safety to themselves and others.

The only fraud which can call into action the interposition of a court of equity in the present case arises from the attempt on the part of George Moyer's heirs to take advantage of the mistake committed by the executor, after that mistake is shown to exist. We think that they, in common with every one who will read the evidence, must be convinced that the executor committed a blunder in making his return, to the amount of the Batteiger mortgage. That the property sold for about $3300, including that mortgage. That the actual cash value, in the opinion of the purchaser, was not over $3300; but the advantage of having eight years to pay the mortgage without the instalments bearing interest induced the bid. But this is one of those unconscionable acts which we cannot relieve against. The laws give them the advantage, and we cannot deprive them of it without subverting and overturning principles of more importance to the community than the hardship in any particular case. The general principle which preserves the infallibility of records, and prevents them from being overturned, or changned by parol, is necessary for the public safety, and cases of individual hardship must yield to the benefit of the whole people.

[In the Matter of Ayres's Estate.]

The application to amend the record is refused, and the report of the auditor, as corrected in regard to the expense of the audit, is confirmed.